Today's case will be called as previously announced and the times will be as allotted to counsel. Our case today, number 231208 and 231211 United States versus Jairo Huertas-Mercado and United States versus Eric Pizarro-Mercado. Attorney for appellant Huertas-Mercado, please introduce yourself on the record to begin. Good afternoon, Mauricio Hernandez Arroyo for the appellant, Jairo Huertas-Mercado. I request two minutes for rebuttal. You may. Thank you. The issue to be decided is whether or not Huertas' Sixth Amendment constitutional rights to a speedy trial were violated when the government took 51 months to bring him to trial after Huertas had provided them admissions, confessions, and knowledge of carjackings and kidnappings before his arrest. Under the facts of this particular case, we argue that it does violate Huertas' constitutional rights and we request a vacature of the judgment. Standard of review will be for plain error as the issue was not raised in the court below. Following the holding on U.S. v. Honda, we believe that and also Supreme Court precedent of Barker v. Wingo and Ducker v. U.S., we believe that the subsequent three superseding indictments should not restart the speedy trial clock as alleged by the government. The rules, the Honda court ruled that it was the same question. On that issue that was reserved as to whether new charges would restart the clock, isn't it true that he said we were reserving and therefore it can't be plain error because it's still an unanswered question? We believe that there was, unlike the characterizations, these crimes were all done within the 19-day period, they were known to the government, they did not file them, they are from a common scheme. They are, we will show that there was not only delay, but the government knew about all these crimes and did not choose to file them at the same time. They decided to sit back and wait, in some cases the second superseding was eight months later for facts they knew at the confession of Huertas. Is there a record of that? Is there a record of his confessions? The record that the government knew, is there anything in the record that says the government knew that these two had committed this whole series of crimes? The record does have, yes, that the carjackings on the day before his complaint, his arrest, he testified to four of the six carjackings and he specifically identified not only the white Kia Sportage, the Toyota Camry, the BMW, but also the Altima, and he also identified the co-defendants, Lujano, Pinegas, and other co-defendants that were, excuse me, cohorts, that eventually were indicted based on his testimony and the first witness by the government was the FBI agent Rosado, who took those admissions and confessions, so we know at least that four of the six confessions were known at his arrest and subsequent briefings by other co-defendants, there is records that they were not cooperating, had not pled, but they were talking with the government. What's not in the record is probably the third superseding indictment in terms of when they found out about one of the murders and the other thing, but clearly Huertas and Lujano were facing, by the time they come to, 18 months later, 15 months, excuse me, 20 months later, for the superseding third on the deaths, they were the two intellectual authors, they were the ones that had planned it and they had been arrested from day one and had been talking and made certain types of confessions. Even if you were right on this, you still have to, that's when it makes it 51 months, right? Or am I wrong on that? The 55 months is from the arrest to trial. Right, so you still then would have to show that on plain error you can win even as to that period of time. It's obviously a longer period of time, but there's a set of reasons the government identifies as to why that period of time is long and you don't have evidence of bad faith or are you saying what your answer to Judge Thompson was is the evidence of bad faith? No, so there was definitely, so the government owns, right, when they decide these indictments, there's records when they, after they first filed the first superseding, the third superseding that started the death penalty, there's a parallel case. I thought under a precedent, there's the question of when the clock starts and when the superseding indictment affects that. That's distinct from the question of whether there's bad faith in the delay, correct?  Okay, so even if you were right on the Honda point, the government's contention is there's no evidence of bad faith as the reason for the delay and then given the showing of prejudice that you've made and the other reasons that are out there, it's just not plain error not withstanding how long the delay was. So there is in the record, there's a parallel case of 516 that's also a capital case and the two are separate and that's the case that at trial, my client, what it does was acquit it so we don't spend a lot of time on that record but every pre-trial conference, because this matter was set for trial a few times, that every time Judge Bezosa talked about this case going to trial, he talked about where we are with 516 and there are citations in the records that we make reference to that at the pre-trial conference, the government is saying, oh, we have a seeking of additional murders, a seeking additional superseding charges that in fact the court relied on to then move the case along and to delay the trials and in one case, after the third superseding sort of was filed in 20 as late as March 23rd of 21, at a pre-trial conference, there's record that the government is still talking about seeking the death penalty even after they had determined no death penalty in our case, they were still talking about 516, they were still talking about superseding and this is something that if they knew about, they would never say when but they definitely misled the court to continue to delay these matters when they had information at different times during the course of this case and they decided not to bring it forward and I would just cite to docket 508. Just to repeat Chief Judge Barron's question, so you're saying that delay in and of itself under the circumstances of this case would constitute bad faith or demonstrates bad faith? So there's prejudice, I believe. What is the prejudice to his trial rights? So we had a series of things and some are controllable of the delay of the superseding indictments. We had, obviously we were in a world of COVID which no one's going to blame the government, we were all affected by that but these gentlemen were in state jails and there was a history of lack of accessibility of visits, of being able to also, in one case the court takes one of the co-defendants out of the jurisdiction. Aside from delay, how were his trial rights prejudiced? Did witnesses die or, I mean, what are you alleging as your client's impediment to defending himself at trial? Well, part of it is the waiting on the government to decide when these charges that they knew about that they kept saying, oh, may supersede when in fact, in one case, a couple of cases, they never did supersede. They never did go back to the death penalty. But this is something that has had, over the course of a couple of years, the death penalty possibility over what does a 20-year-old person who's illiterate and history of mental illness but there was a lot of problems with counsel and although he had learned counsel for a quick minute, there is some citations in the record of the ability to being able to effectively communicate with his attorney and also consult with his co-defendant, which were cousins but they're really first cousins that grew up together. My time is running. I would...  I'm sorry? You said your time has run. Has run. I don't know if there's any other questions. You have a rebuttal, too, but... I'll wait for a rebuttal. Okay. Thank you. Thank you, counsel. Attorney for Pizarro-Mercado. Good afternoon. Five minutes. Good afternoon. Attorney Jose Gaston Villanueva on behalf of defendant Eric Pizarro. Your Honor, first, I would like to start saying that I filed a brief and the reply brief, so I'll try not to be repetitive on the arguments. But I do want to mention when we're talking about the sufficiency of the evidence, if you go... If you start in counts one and two, that's the alleged carjacking and kidnapping of Brian Myers and Brian's mother. I argued... I was the attorney for Eric down before the district court in this time courtroom. And, Your Honor, I argued that first, my client was not identified by anyone except by the two cooperating witnesses, Lujando and the other person. And, Your Honor, the evidence shows, for example, that the mother of Brian Myers, she was not kidnapped or abducted. She is the one that initiated and stated that she wanted to be and go where her son was being taken to. Her son had been taken in a Kia Sportage, a white Kia Sportage that had already left. And she brought the keys to another car, to a BMW, and that's where the two cooperating witnesses placed my client on the backseat of that car. And the lady testified, she testified here, that at all times, she was looking at that car in front, trying to see where they were taking her son. I argued that there was no carjacking and no kidnapping by my client. If there was any, it was others, those that were in that first car. Just so I understand this argument, this is with respect to the BMW in particular? In the BMW in particular. That's where my client... Just so I understand, right, just so I understand the theory of the case. You're just saying it was because the driver voluntarily, is your view? Because she was the one that, she brought the keys to the car and she said, we have a car. Because they didn't have a car. She also stated that when they were going to start the car, they didn't know how to drive the car. It wouldn't start. Remember, this is a few years back. It's the car that you have to put the brake before you start it. In the case, in the old days, we didn't have that. And I'm saying that those two count. As to my client, they clearly show that he did not participate in that. Counsel, why, even if he's in the car with Ms. Perez, and even if we accept your view of the evidence, the jury obviously could have seen it differently. Your client was also charged as, could also be liable as an aider and abetter to the kidnapping overall, even if he was in a different car. Couldn't he? Your Honor, what is described by Brian Meyer's mother is that she saw when somebody was pulling her son by the thread lock and was taking him to the car. And they put him in the car. She walks downstairs and she goes and talks to that person and says, I want to get into that car along with my son. They said, we don't have space here for you. And that's how, when she said, I have to. I think what I'm just trying to understand though is, does it matter for purposes of liability for the crime that your client was in a different car? The cars traveled together and there's aiding and abetting liability that the government can rely on for the overall kidnapping. I'm saying that he did not participate in the Kia Sportage at all. That's the three persons that went along with Brian Meyer. And those people left. But they all aided. They all aided before they got him in the car in getting him in the car. They were either forcibly putting him in the car or they were protecting those who were trying to put him in the car. There was no evidence saying that they were protecting the other persons. There was no evidence whatsoever showing that my client had participated up to that point. Now, as to the BMW, he gets in that car and he goes to the back. They say it's the back side where he's sitting. That was the evidence that was presented at the trial. And the witness, Brian Meyer's mother, I believe her name is Maria, they asked her if she saw any of the persons here that had acted on that day. And she looked around and she said there were none that the ones that she had seen were darker than anyone that was here. And there were people watching. There's a victim named Rojima, right? Excuse me? There's a victim named Rojima? Yes. Okay. In which car, is that person put into a car? Yes. In which car? Second car. Which car is that? In the first car is Brian Meyer. The Sportage is the Rojima car? Brian Meyer is in the Sportage. And Maria, the lady, is on the BMW. Is that Rojima? Brian Meyer is the name, the alternate name for the victim. Could be. Maybe it's a compound name, Maria Irma, maybe. Okay. Okay. Or Irma Maria. And I just want to understand that the way the case was charged, the charge that you're challenging, is it specific as to the BMW versus the Sportage or not? No, both.  Both in the count. I'm pretty sure that they have both in the count, yes. Because they mentioned both Brian Meyers and Irma. I'm pretty sure. I have to be candid with the court that that's the way it's charged. And... Thank you. I know my time is up. Thank you. Thank you, Counselor, Attorney for the appellee. Please come up and introduce yourself on the record to begin. Good afternoon, Your Honors. May it please the court. Ricardo Invert Fernandez for the United States. Yes, Your Honor. Could you just help me understand the fact pattern so I am clear as to what's happening? The charge is for both the Sportage and the BMW? No, Your Honor. The carjacking charge is specific to the BMW. The Sportage is another count altogether because it was carjacked the day before from a separate victim. So the carjacking charge that they're challenging is the BMW carjacking? Yes, Your Honor. Okay. And what is the theory of the government as to how that's a carjacking? Forget whether there is evidence of the defendant participating in it. Could you just explain to me what the theory is for how it was a carjacking? Yes, Your Honor. Well, I'm going to, of course, answer your question. But before I do, I just want to clarify that on appeal, the defendants, both of them, they only challenged the sufficiency of that carjacking, not the kidnapping, and only as to the intent of the principle. They don't challenge anything beyond that.  I wanted to clarify that. To answer your question, Your Honor, the theory of the government is that in terms of the intent is completely satisfied by the four defendants who perpetrated the carjacking. You charge it as a carjacking? Yes, Your Honor. So I just want to say, what's the theory? Forget whether there's enough evidence of the defendant being involved in it. Yes. Just how is it a carjacking at all? If I'm understanding the defendant's position, a person gets in the car, drives the car, that's not usually the way carjackings operate. I apologize, Your Honor. I was going too far back than what you were asking for. The theory of the government is that the defendants were cross-aiding and abetting each other. They aimed guns, they hit the victims, and they demanded the BMW from them, and they took control of that car. They took that car with the intent to... Okay, and they took it from whom? Well, the car belongs to Brian Myers or Rowena, as Your Honor mentioned. Brian Myers is his stage name. The car belongs to Rowena, but the keys were demanded from Maria Perez, who is Rowena's mother, who is there at the time she's sort of wrestling with the perpetrators for control of her son. But he had title to the car? Yes, Your Honor. Rowena had title to the car, and it appears from the evidence introduced at trial that Maria Perez was in possession of the keys of the car, so she was in possession of the car, and they demanded the keys from her, and they took possession of the car from her. And so the theory is that the jury could find her driving away with it was not voluntary in any way? Well, Your Honor... What? She didn't drive away. Huertas was driving the car. She was in the car. So she just gives the keys to Huertas? Yes, she gives the keys to Huertas, and Huertas drives the car. And I also want to clarify, the only two occupants of the BMW are Huertas and Maria Perez. Rowena is in the sportage, and inside the sportage with Rowena are Lujando, Pizarro, and Kevin Villegas, who is the fourth defendant. If I'm understanding the defendant's position, when they say, since the mother who's with them in the car says, I want to go. Yes, Your Honor, but that's... I have two points to make as to that. That's a far cry from saying that the defendants didn't violently or with the intent to commit serious bodily harm take control of the car. They demanded it from Maria Perez as they were, you know, exhibiting violence. And also that whole argument of the car somehow being voluntarily supplied in context ignores what's going on at the moment. By this point where the car, the keys are asked for, and Maria Perez desperately goes in the car and goes along with them, the perpetrators have been pulling Rowena by his braids. They have been aiming guns at the victims there. They have been discharging guns, brandishing them. They have been wrestling with the victims. It's a whole pattern of violent conduct, chilling violent conduct in broad daylight. And I think to say that somehow Maria Perez voluntarily, you know, gave up the car, went with them, ignores the context of what's been going on and the clear threats that have been made to her and the very clear threats that have been made against her son and the violence that has been employed against her son. So I think in context, that argument that it was somehow voluntarily supplied rings hollow in the government's view. Unless the court has further questions about the carjacking itself, I'd like to turn my attention to the speedy trial claim. And could you specifically address their argument that we should somehow infer bad faith or malice or whatever on the government's part because you had knowledge right away about at least four of the six crimes and didn't move to indict right away? Yes, Your Honor. In June 19 and 18 of 2018, right, which coincides with the date of the original accusation to arrest and the charging by complaint of Huertas, Agent Rosado, an FBI agent, he interviews Huertas. And in that interview, Huertas confesses to the carjacking and kidnapping of Brian Roena. And he also mentions that he perpetrated three other carjackings and he identifies the cars that he carjacked. But that doesn't mean that the government at that time had sufficient evidence to bring those charges to a grand jury and obtain an indictment. That happens much later. I'd like to focus on the carjacking of Barreras-Ultima in terms of this interaction between those admissions and the date of charging. That count is charged, I think, 14 months later in September of 2019. And we know from Barrera's trial testimony that it was not until October 29 of 2019 that the FBI is able to interview him and get him to identify Huertas. That happens and the government quickly charges Huertas with that carjacking, I think, in a matter of a week and a half within 10 days. So I think the record, in terms of those admissions, it can't be true that just on the basis of those admissions, the government knew enough. And, of course, in those initial admissions, there's nothing about the conduct that was later charged in the third superseding indictment, which are the carjacking of Calles' Tacoma and of an Infiniti by El Junque and, of course, the kidnapping and murder of Luis Saenz. Counsel, can I ask you, why does it take 14 months to interview that person? I understand you don't, all you know is the type of vehicle, but the co-defendants have been identified, apparently, and you can interview them as well. Why does it take that long to figure out who owned that car and interview them? Your Honor, I'd like to clarify the record there also a bit. The co-defendants that Huertas cursorily identified in the interview were the ones who participated in the kidnapping and carjacking of Brian Ruana. No, I understand, but there's a lot of overlap between the perpetrators. But the government doesn't know that by then. All the government has is the confession as to the carjacking and kidnapping of Brian Ruana with these set of people and then Huertas saying, by the way, I also committed these other offenses and he doesn't specify that it was the same group of people or not. And there are no admissions by any of the other co-defendants when they're interviewed by the FBI? The record is devoid of any interviews with any of those defendants by this point and those defendants weren't charged. Huertas Lullando was charged right away with the carjacking and kidnapping of Brian Ruana. He wasn't charged with anything else until the third superseding indictment because the government simply doesn't have enough information or evidence about that. I'd like to clarify the timeline, though, because there is a, the record isn't developed as it should be on this issue because Huertas never asserted his speedy trial rights below, so the court never had the occasion to engage in record building about it.   But what we do have is sort of these guideposts that tell us what is happening throughout this case. In that light, you know, Huertas is charged in June 2018, right? The trial is quickly set for, I believe, August, no, November, no, August 2018, and then it's set aside because the parties agree that more time is needed and during this time the government is being crystal clear with both the court and Huertas that the government        is in ongoing investigations of Huertas' criminal conduct. And Huertas never, objects never, questioned that. He joins the request for more time with the government saying, yes, more time is needed. Eight months after original accusation, we get the first superseding indictment which adds the two carjackings that were, that he admitted to Roldan's Kia Sportage and Martinez's Camry. And then we get         and then five, five or six months later, we get,  the government has that identification from Barreras and also charges the carjacking of the Altima. During this time, there's no cooperator on board and no cooperation is involved in bringing these cases to being charged. After that second superseding indictment, we know the government is engaging in plea negotiations with Huertas because his counsel asked for a fry hearing and that's a docket 77.     And he says that Huertas has rejected the governor's, the government's final offer. That means as a matter of practice, the government does not engage in plea negotiations if it expects to supersede an indictment. So that means that the government is not contemplating any superseding indictment at that point. The third superseding indictment is not in the government's radar at that moment. And the parties, trial has been set for November 2019 and the parties are working diligently towards that trial which the second superseding indictment does not delay. And discovery has been completed. All of this is in the record. And then what happens is that in November 2019, the court, Suas-Fonte, continues the trial because of its own scheduling conflicts and sets it for February 2020. And after that, what we have is an intervening event where Luyando decides to cooperate with the government. He makes that decision in January of 2020. And again, within weeks, we have the third superseding indictment that was made possible by the information that Luyando supplied in his debriefing towards the end of January. So, we have these guideposts in the record that show that the government is charging each new set of counts as soon as it feasibly can. It's being crystal clear with the defendant when it's in ongoing investigations. And we know that the government is trying, is trying throughout this period of time to get to a speedy resolution of the case because we have it engaging in plea negotiations with Huertas. We have it making a final offer to Huertas. We have it ready to go to trial in November 2019. And that doesn't happen not because of the government, but because of the court. Of course, that... Am I right in understanding that the government's argument is that even if we start the clock back at the beginning so it's a 51-month or so delay, you still think there's no plain error. Is that right? Yes, Your Honor. I think that's the simplest path to an affirmance. Although I believe the government has a good hand argument, which wouldn't be so much a restart of the dates. It would just be separate clocks for separate counts. So while there will always be a period of 51 months for the court's review because that's what applies to the counts related to the Ruena kidnapping and carjacking that was initially charged. But of course, the calculus is different when you take into consideration Luis Sainz's murder, which was charged about 20 months later and the delay there is less and you don't have to contend with any of these factual discrepancies. You just have to look at what happened after that, which of course would be COVID hit and pandemic hit and it threw a giant monkey wrench into the work sort of and everything became delayed, not only in this case, but on a national level. And then we have a bunch of justifiable things that happened that were to delay the case, such as the death penalty review, which is there as a procedural safeguard for Huertas to protect him from an arbitrary exposure to the death penalty. And we also know there that that process took about a year and more than six months into it, by February of 2021, we have a filing from Huertas in which he tells the court, the COVID pandemic has impeded me from preparing for this case. So he's not ready for trial at that point either. And it also has prevented me from being able to submit a mitigation package. So the only way to read the record, which is devoid of any fact finding beside that as to the death penalty review period, is that Huertas himself is the one that's causing the delay in the decision of whether or not to seek the death penalty in this case, because of course he's entitled to submit a mitigation package. It's incredibly important that he does. And he hasn't been able to do that months into the process. And that process ends in May 2021, shortly after that. And then we have, again, a period of plea negotiation between the parties. Then we have a plea agreement offer, a written plea agreement offer being submitted to Huertas by January of 2022. And he rejects that. And then we have the parties marching to trial, trying to make it happen as soon as possible. So I don't think the record is devoid of any bad faith in this case. One last question. I'm sometimes uncertain from our case level, and I don't know, maybe you can tell me I have no reason to be, as to whether the detention and the prejudice that comes from the detention, independent of the effect of the prejudice of witnesses and the like, counts as a prejudice. Your Honor, it does weigh somewhat. But this court's, and I think every court's, case law is pretty clear that of the three prejudice considerations in this sort of case, in the speedy trial context, the most important is the last, which is the impairment to the defense, which Judge Thompson referred to earlier. The detention itself is, of course, weighed in the analysis. And you acknowledge that in your brief. I mean, I think you acknowledge that, of course, him waiting for that long with a possible death penalty charge while he was detained was very difficult. It was, Your Honor. It certainly weighs in his favor somewhat. And I have two points to make as to that. Number one is, he never asserted his speedy trial right below. So the showing he needs to make is much stronger, particularly on plain error review. Right? I think in Barker v. Wingo, the court says that only in the extraordinary case. I'm just trying to figure out how to think about weighing it when it's of this length. I'm sorry, Your Honor. I'm just trying to think about how it should be weighed when it's of this length. I mean, I understand all your points about, but is the, I mean, if it's, there's a difference between sort of delays chargeable to the defendant. Yes. And then benign delays chargeable to the government. Yeah. And I'm just trying to think through how one's supposed to calculate benign delays chargeable to the government in a circumstance where it's a very, very long detention. Because, I mean, as you acknowledge, this is at the longer periods that we've confronted. Is that right or not? Of course it is, Your Honor. And even those benign delays attributable to the government, they are weighed per this court's precedent, but they're weighed slightly or less heavily against the government. And I think in a case where the defendant needs to make a much stronger showing and he needs to establish the extraordinary case in order to succeed because he didn't assert his right below, then I don't think he achieves that. As to the 51-month delay, of course it's important at this stage, but I think the calculus would be different if you were weighing prejudice in the first instance when the defendant hasn't been convicted. And I think that's why this court's precedent says that when defendants raise the speedy trial issue to not secure a quick trial but rather to dismiss the offense court should be skeptical of that, particularly when he has already been convicted. So he's seeking sort of a to get out of that conviction in the government's view. Thank you, Your Honors. Thank you, Counselor Attorney Hernandez-Arroyo. You have a two-minute rebuttal. Please reintroduce yourself on the record. Howdy, Sir Hernandez-Arroyo Thank you for the three quick points. The first interview did have identification of Luyando and Cepeda, which was part of the Count 10 of the Tacoma's indictment on the second superseding. There is, in terms of the quantum of delay and the weight given, in part to one of your questions, is that at a bare minimum, there's a presumptive prejudice in deserving of substantial weight, quoting Dogger. And the last thing to give a clearance, the guideposts about clarity of the government, back in March 23 of 21, at that point the death penalty had been taken off the table in our case, but at the same time at a pretrial conference, a status conference, the court is asking about another murder, about another subject of superseding indictment, and the U.S. says, we haven't decided that because there are many potential ways of resolving this case that not necessarily involves superseding in that murder. Potentially, it may be supersede, but that hasn't been decided yet. The court, would that be supersede in 516 or in our case, 451? And the U.S. said, let me check. 516, so the court says, so it could be. He is still eligible in 451. That's the death penalty. You are waiting for a decision by the Department of Justice as to whether to proceed with the capital case or whether they will tell you not to seek the death penalty. And you're still waiting for the Justice Department to determine what to do with the other murder and to determine whether or not if there is another murder to supersede 516. We know that there was never any superseding indictment. We know that there was never any other new defendants in this case, but it was always that threat that they kept having, hoovering over the defendant in this case, which led to his anxiety and his constant view of death penalty in these cases that was solely in the control of the government. And if there's not any other questions, please submit. Thank you very much. Thank you, counsel. That concludes arguments in this case.